**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PETER A. CALI,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-649-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

### *I. BACKGROUND*

**A.  Procedural History**

Plaintiff originally filed an application for Social Security disability insurance benefits on June 7, 1997, more than ten years ago, alleging that he became disabled on March 30, 1996 (R. 26, 74-76, 89). The claim was denied initially, and upon reconsideration (R. 55-63; 66-67). Plaintiff requested

and received an administrative hearing, before an Administrative Law Judge ("the first ALJ") (R. 312-378). The first ALJ issued a Notice of Decision-Unfavorable dated August 14, 1998 (R. 193-203). On June 20, 2002, the Appeals Council denied Plaintiff's request for review (R. 212-14). Plaintiff then filed his appeal in this Court. *See Cali v. Commissioner of Social Security,* Case No. 6:02-cv-982-28DAB.

After the Commissioner was unable to locate the tape recording of the administrative hearing, the case was remanded under sentence six of 42 U.S.C. §405(g). Case No. 6:02-cv-982-28DAB- Doc. No. 13. On remand, a second administrative hearing was held on September 24, 2003. R. 21-54. The first ALJ issued a decision on November 14, 2003 finding Plaintiff not disabled. R. 7-14. Following this second hearing, the Commissioner moved to reopen the case on January 21, 2004. Case No. 6:02-cv-982-28DAB - Doc. No. 15. On the merits of the appeal, this Court recommended that the District Judge reverse and remand the decision because the first ALJ's determination regarding Plaintiff's allegations of pain and limitations was not supported by substantial evidence and was not made in accordance with proper standards of law; the first ALJ improperly relied exclusively on the Grids in determining that Plaintiff could perform other work in the economy and failed to obtain the services of a vocational expert to testify as to the vocational impact of Plaintiff's non-exertional limitations; and the first ALJ improperly doubted Plaintiff's allegations of dyslexia based on Plaintiff's work history even though Plaintiff's past relevant work and training as a diesel mechanic, carpenter and driver may not necessarily have required a high degree of literacy. Case No. 6:02-cv-982-28DAB - Doc. No. 25 at 13-14; R. 237-50, 269-82. The District Judge adopted the recommendation and remanded the case for a new hearing on November 22, 2004. Case No. 6:02-cv-982-28DAB - Doc. No. 26; R. 235-36, 283-84.

Following this second remand under sentence four of 42 U.S.C. §405(g), a different ALJ, Douglas Walker (hereinafter "the ALJ"), conducted a *de novo* hearing. R. 315-78. In a decision dated October 19, 2005, the ALJ found Plaintiff not disabled. R. 253-65. The Appeals Council denied Plaintiff's request for review on April 25, 2006. R. 229-31. Plaintiff filed this action for judicial review on May 15, 2006. Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of limitations associated with a back injury, "bone shifting," right leg numbness, depression, the lack of a high school education, and dyslexia. R. 32-38, 44-45, 64, 89-99, 111-13, 121, 125, 328-38, 341, 343-50, 359. Plaintiff was forty-six years old when his insurance expired on December 31, 1996. R. 39, 77, 226-27. Plaintiff reported that he did not complete twelfth grade and did not graduate from high school, but had completed two years of vocational training in diesel mechanics. R. 25-26, 106-07, 264. Plaintiff consistently testified that he had dyslexia (R. 37, 64), and he could not read or write. R. 322. Plaintiff was forty-six years old on his date last insured. R. 24. Plaintiff's past relevant work experience includes employment as a driver, laborer, and self-employed carpenter R. 115.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered severe impairments, including bilateral spondylolisthesis at L4-L5 with foraminal stenosis, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 259-60, Finding 2. Plaintiff had past relevant work as a government import/export business owner/driver, mobile home set-up person, public school bus

driver, construction company owner/carpenter, tow truck driver, and shed delivery driver and set-up person.  R. 26-32, 115-20, 322-27.

The ALJ determined that Plaintiff did not have the residual functional capacity (RFC) to perform past relevant work, but retained the RFC to perform unskilled, sedentary jobs existing in significant numbers in the national economy for the relevant period on or before December 31, 1996. R. 260, 264-65, Findings 4-11.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 265, Finding 12.

Plaintiff now asserts that the ALJ erred by finding he had the RFC to perform sedentary work contrary to the treating orthopedic opinion of Dr. Broom; by failing to address Plaintiff's illiteracy from dyslexia; and by improperly applying the pain standard and evaluating his credibility.  For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A. Plaintiff's Literacy

Plaintiff contends that, despite uncontradicted evidence he is unable to read or write, the ALJ failed to make any findings regarding Plaintiff's inability to read and write and failed to incorporate these limitations into the hypothetical question posed to the VE. The ALJ also incorrectly found that Mr. Cali graduated from high school. R. 261. The Commissioner admits the ALJ did not specifically state that Plaintiff was not able to read or write when he questioned the VE, but contends the ALJ's omission does not amount to reversible error under the facts of this case.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from

doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

It is the Commissioner's burden to establish that a claimant is literate. *Silveira v. Apfel,* 204 F.3d 1257, 1261-62 n.14 (9th Cir. 2000). Under the SSA Regulations, illiteracy is defined as "the inability to read or write . . . a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). This definition makes explicit that literacy turns upon the ability to write as well as to read. *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir. 1987). "High School education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4). In evaluating an individual's "educational" level, the following categories are used: 1) illiteracy; 2) marginal education; 3) limited education; and 4) high school education and above. 20 C.F.R. § 404.1564(b).

The Commissioner contends the ALJ's failure to address Plaintiff's illiteracy does not amount to reversible error under the facts of this case because "although Plaintiff baldly asserts that he cannot read or write, nothing whatsoever in the evidence supports this claim." Doc. No. 21 at 20. The Commissioner ignores Plaintiff's testimony and misapprehends the burden to produce evidence, which is on the Commissioner once Plaintiff's illiteracy is raised.

The Commissioner points to Plaintiff's work in jobs delivering and setting up mobile homes, driving a public school bus, driving a towing truck, and serving as a delivery driver and set-up person for a shed company, and a handyman/carpenter (R. 26-32, 115-20, 322-27) as evidence that he was

literate and he reported that he performed "writing" on many of these jobs. R. 116-20. However the "writing" he describes in SSA reports was actually notations reporting "dates, times, mileage, tolls, fuel, signature for deliveries, measurements, calculations, estimates, receipts" (R. 116-20), none of which involves "reading and writing" in English in the traditional sense – no more than numbers, figures, or signatures.  Moreover, as the Court noted in its previous Report and Recommendation (in Case No. 6:02-cv-982-28DAB), "Plaintiff's past relevant work and training as a diesel mechanic, carpenter and driver may not necessarily have required a high degree of literacy."

The case of *Eggleston v. Bowen*, 851 F.2d 1244 (10th Cir. 1988) is directly on point.  In *Eggleston*, the plaintiff was academically illiterate, but had an extensive work background as a certified welder, working on occasions from blueprint drawings, as a working foreman of a crew of as many as 321 persons, operating his self-employment welding business, and as an automobile mechanic for an authorized Chevrolet and International Harvester Companies. *Id*. at 1248.  The Tenth Circuit rejected the ALJ's inference that Eggleston was literate based simply on the type of past relevant work he had done:

> Our examination of the record reveals no evidence that Eggleston is literate. Thus the ALJ apparently relied solely on an inference derived from Eggleston's previous employment to support his conclusion that Eggleston can read and write. This inference, however, has been rebutted by direct testimony from Eggleston. He testified that he cannot read and write, except his name, and that he has never had a job where he was required to do so. When questioned about how he handled paperwork (receipts, for example) when he had his own welding business, he responded that his wife handled it. When he needed to work from blueprints, his boss gave him enough direction so that it was unnecessary for him to read the blueprints himself. He testified that other people have done his reading and writing for him in non-work situations as well.  Furthermore, on tests administered by a vocational expert, Eggleston scored at the first grade level or below in reading, spelling and math. Therefore we find that there is not substantial evidence in the record as a whole to support the ALJ's finding that Eggleston is literate.

*Id.*

Similarly, the record in this case contains repeated references in Plaintiff's testimony to his inability to read and write, *e.g.*, he was muscle dyslexic and his wife, who is a school teacher, had tried to help him learn to read a few times; he had to take an oral driving test to get his driver's license (R. 37); he could not read a newspaper and his wife read any papers that came in the mail to him (R. 37); he could not write a short note, but only his name, and he could write numbers. R. 351. He testified that he had completed eleven years of schooling, but he just went to classes, was put in the back of the class and stayed quiet so he would pass the courses; he also played football which "helped him pass." R. 322. He testified that he managed to get by in auto mechanic school because it was "hands on" work. R. 322. *Cf. Quinn v. Sullivan*, 896 F.2d 1367, 1990 WL 15684, *1 (4th Cir. 1990) (unpublished) (substantial evidence of literacy where claimant indicated on the record that he had eight years of formal schooling, that he spent a half hour per day reading the newspaper, and that he could read a grocery list and fill out a bank deposit slip); *Francis v. Chater,* 974 F.Supp. 1361, 1366 (D. Kan. 1997) (holding claimant's dyslexia was not severe where he reported to physician that he read the newspaper for 30 to 40 minutes each day, magazine articles two or three times a week, and performed the reading necessary to handle the paperwork as a vacuum cleaner repairman).

In arguing that Plaintiff's illiteracy contention is "totally unfounded," the Commissioner also points to the requirements for a commercial Driver's License in Florida (including a school bus driver) which require an individual to pass two groups of tests including a series of knowledge tests, citing the website for the Division of Motor Vehicles ("DMV"). There is no evidence that Plaintiff was required to take the tests described on the DMV website in written form, or that he did not just transfer his commercial license from his former resident state of New York or New Jersey where he

drove a tractor/trailer, or that he was not administered an oral driver's license examination, as he testified to at the hearing.

The Commissioner contends that assuming *arguendo* "Plaintiff's illiteracy allegation is true, there is nothing in the evidence to indicate that the VE did not properly consider Plaintiff's educational status" because the ALJ asked the VE to consider an individual with Plaintiff's "education and past work experience." R. 370-71. The VE heard Plaintiff's testimony during the October 19, 2005 hearing, including that he could not read or write and that he did not graduate from high school; but completed the eleventh grade and attended trade school. R. 321-22. Thus, the Commissioner's argument goes, when the ALJ instructed the VE to consider a person with Plaintiff's education, the VE presumably considered a person who "allegedly could not read or write" and "because the VE only identified unskilled jobs, there is no evidence that she failed to consider Plaintiff's limited education."     Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The court finds the ALJ's decision was not based on substantial evidence for several reasons. First, the ALJ's decision is not based on substantial evidence because the ALJ indicated in his decision that Plaintiff was a high school graduate (R. 264) even though there is no evidence that Mr. Cali can read and write at a high school graduate level and Plaintiff testified that he did not finish high school.  R. 321.  A "high school graduate education" or the equivalent is far different from the educational level of "illiterate" or "marginal education."  *See* 20 C.F.R. § 404.1564(b).  Because Plaintiff's suffers from the learning disability of dyslexia[1], he may have attained the necessary "reasoning and arithmetic" skills but lack the required reading and writing skills of a high school graduate.  Moreover, the number of years of formal schooling is not meaningful in certain circumstances.  *See Cole v. Apfel,* 2000 WL 290432, 4-5 (N.D. Ill. 2000) (holding that the ALJ was not entitled to infer, from the fact that plaintiff had finished the seventh grade, that plaintiff was not illiterate because the formal education level was not a meaningful measure of his educational attainment and he had only worked in construction which required little, if any, reading or writing ability).

It is not clear whether the VE, in considering Plaintiff's education, also made the error of viewing Plaintiff as a high school graduate; additionally she was not asked to assume Plaintiff could not read or write. Second, the VE was not at the first hearing held on September 24, 2003, when Plaintiff testified in part about his inability to read and write. R. 21-54. As the ALJ documented, at that hearing, Plaintiff testified that he was probably passed through his classes because of dyslexia and because he played football, he could read very little, he was unable to read a newspaper, and he

---

[1]Dyslexia, or reading disorder, is the most common (more than 80%) of all learning disabilities.  *See* www.emedicinehealth.com/dyslexia/page3_em.htm. Symptoms include: difficulty reading single words, slow speed of reading, poor spelling, trouble with comprehension of reading passages, and generally good number math concepts.  *Id*. at page 4.

could not write very well. R. 261. Although some of this testimony was repeated (R. 322, 351), there is no evidence that the VE was aware of Plaintiff's inability to read even a newspaper.

Third, as Plaintiff points out, the positions the VE identified as other work existing in the national economy Plaintiff could perform, surveillance system monitor and food and beverage order clerk, require Level Three and Two reading levels, respectively, according to the Dictionary of Occupational Titles (DOT) number provided by the VE. According to the DOT, the occupation of surveillance system monitor requires Level Three reading ability, which is defined as the ability to read a variety of novels, magazines, atlases, and encyclopedias and to read safety rules, instructions in the use and maintenance of equipment, and methods and procedures. *See* Doc. No. 16-2. The occupation of food and beverage order clerk requires a Level Two reading ability which is defined as the ability to read at 190 to 215 words per minute and be at the reading level of reading adventure stories, looking up words in a dictionary for meaning, spelling, and pronunciation. *See* Doc. No. 16-3. There is no evidence, much less substantial evidence, that Plaintiff had the reading ability required for the two occupations cited by the VE.[2] Tr. 264. There is no evidence in the record of any educational testing, as was performed in *Eggleston*, to determine his reading proficiency level.

In the case of *Wolfe v. Chater*, the Eleventh Circuit explained, "[t]he regulations make clear that being able to sign your name doesn't make you literate and that you can be illiterate even if you have had a significant amount of formal schooling (it may not have taken)." 86 F.3d 1072, 1076-77 (11th Cir. 1996) (citing *Glenn v. Secretary of Health and Human Svcs.*, 814 F.2d 387, 390 (7th Cir. 1987)). As in *Wolf*, the Court does not find that Plaintiff is illiterate, but simply that the record is

---

[2]If the VE did assume that Plaintiff was not literate, then the VE's testimony conflicts with the requirements of the DOT, and the VE and/or the ALJ neglected to explain the discrepancy, in contravention of the SSA regulations. SSA Regulation 00-4p provides that the ALJ must resolve conflicts between VE testimony and the DOT before relying on the VE evidence to support a determination or decision that the claimant is or is not disabled.

lacking in evidence to support the finding that Plaintiff has "at least the equivalent of a high school education," as the ALJ erroneously found (R. 261, 264). *See id.* at 1077. Therefore, the case is **REVERSED** and **REMANDED** for a finding on the issue of Plaintiff's literacy or whether other jobs exist in the national economy that Plaintiff can perform at his level of reading and writing, once the appropriate testing is performed.

### *III. CONCLUSION*

The decision of the Commissioner is hereby **REVERSED** under sentence four of 42 U.S.C. § 405(g) and this case is hereby **REMANDED** to the Commissioner of Social Security to perform the appropriate testing of Plaintiff's literacy and to decide whether other jobs exist in the national economy that Plaintiff can perform at his level of reading and writing, once the appropriate testing is completed. **Due to the extreme age of this claim the Commissioner is urged to give it priority on remand for a prompt disposition.** The Clerk of the Court is hereby directed to enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2007.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record